UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

In the Matter of Motion to Enforce Subpoena       Case No.
Issued to KEVIN WHITE

In relation to action pending in Western District of New
York, *April Morgan v. Oshkosh Corporation, and
Oshkosh Defense, LLC.*
Case Number Case No. 21-cv-00779-LJV-HKS

United States Courts
Southern District of Texas
F I L E D

MAY 2 6 2023

Nathan Ochsner, Clerk of Court

## MEMORANDUM OF LAW SUPPORTING
## MOTION FOR CONTEMPT AND TO COMPEL A DEPOSITION OF KEVIN WHITE

Anthony J. Colucci, III, Esq.
Marybeth P. Mantharam, Esq.
Torrey E. Grenda, Esq.
   *Of Counsel*

COLUCCI & GALLAHER, P.C.
800 Main Place Tower
350 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080
*Attorneys for Oshkosh Corporation and
Oshkosh Defense, LLC*

Defendants, Oshkosh Corporation and Oshkosh Defense, LLC (collectively "Oshkosh"), respectfully submit this Memorandum of Law in Support of its Motion to for Contempt and to Compel a Deposition of Kevin White.

## INTRODUCTION

The underlying matter, *April Morgan as Administratrix of the Estate of Christopher Jordan Lynn Morgan v. Oshkosh Corporation and Oshkosh Defense, LLC,* Case No. 21-cv-00779-LJV-HKS ("Morgan Action"), is currently pending in the United States District Court for the Western District of New York ("WDNY"). The Plaintiff, April Morgan, asserts claims against Oshkosh for wrongful death grounded in negligence and strict products liability. See Ex. A at ¶¶ 7-8, 15.

As set forth at length in the Attorney Affidavit submitted with this Motion, Kevin White ("White") was properly served with a subpoena to testify at a deposition in the Morgan Action. White, however, failed to appear for the deposition. White's testimony is critical to Oshkosh's defense of this matter.

Under Rule 45 of the Federal Rules of Civil Procedure, "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena." See Fed. R. Civ. P. 45(g). Since White has accepted service of the subpoena in Houston Texas, Oshkosh respectfully seeks an order from this Court compelling him comply with the subpoena pursuant to Rule 45(g). Additionally, in light of White's unjustified conduct and blatant disregard of federal law, Oshkosh further requests that this Court find White in contempt and award Oshkosh its reasonable fees and costs for bringing the Motion, along with such other sanctions as deemed just and proper by this Court.

1

FACTUAL BACKGROUND

The facts underlying this matter are set forth in the Affidavit of Marybeth Mantharam, Esq., sworn to on May 22 2023 and are incorporated herein by reference.

ARGUMENT

This court should issue an order compelling White to appear for a deposition in accordance with the subpoena and finding him in contempt for his conduct in failing to comply with a properly issued and served subpoena. Under the Federal Rules of Civil Procedure, a "deponent's attendance may be compelled by subpoena under Rule 45." See Fed. R. Civ. P. 30(a)(1). Pursuant to Rule 45, a subpoena may command a person—including a nonparty—to attend a deposition within 100 miles of where the person resides. See Fed. R. Civ. P. 45(c)(1)(A); Squires v. Toyota Motor Corp., No. 4:18-CV-00138, 2021 U.S. Dist. LEXIS 87562, at *7 (E.D. Tex. May 7, 2021); Moreno v. Northside Indep. Sch. Dist., Civil Action No. SA-11-CA-0746-XR, 2012 U.S. Dist. LEXIS 206902, at *6 (W.D. Tex. Nov. 20, 2012) (If the non-party does not appear or object to the subpoena, the non-party may be held in contempt).

The scope of discovery obtainable through a Rule 45 subpoena is governed by the same standards set forth in Rule 26(b), meaning a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and such discovery sought must be "proportional to the needs of the case," and the burden or expense of the proposed discovery should not outweigh its likely benefit." See Fed. R. Civ. P. 26(b)(1); Kleppinger v. Tex. DOT, No. L-10-124, 2012 U.S. Dist. LEXIS 208441, at *3 (S.D. Tex. Mar. 4, 2012); Nichols v. White, No. 6:19-cv-00111, 2020 U.S. Dist. LEXIS 249029, at *2 (E.D. Tex. Feb. 10, 2020).

Subpoenas directed at nonparties must be issued by the court in which the action pending or an attorney admitted to practice before the issuing Court, and the deposition—or the place of

compliance—must be within 100 miles of the witness's place of residence.  See Fed. R. Civ. P.

45(a).  Courts recognize that when a subpoena commands the witness to appear for his deposition

remotely via a Zoom video conference, the "place of compliance" is within the Rule's 100-mile

geographic limitations.  See In re Combat, No. 3:19-md-2885, 2021 U.S. Dist. LEXIS 121444, at

*14-15 (N.D. Fla. May 28, 2021).  In In re Combat, the Federal District Court for the Northern

District of Florida held as follows:

> [A] party may use a Rule 45 subpoena to compel remote testimony by a witness
> from anywhere so long as the place of compliance (where the testimony will be
> given by the witness and not where the trial will take place) is within the geographic
> limitations of Rule 45(c).  This is because "the 100-mile limitation now found in
> Rule 45(c) has to do with the place of compliance; not the location of the court from
> which the subpoena issued.

Id.

A person served with a subpoena may raise objections to the subpoena or file a motion to

quash or modify the subpoena.  See Fed. R. Civ. P. 45(d); CCB LLC v. Banktrust, No.

3:10cv228/LAC/EMT, 2010 U.S. Dist. LEXIS 113503, at *2-3 (N.D. Fla. Oct. 14, 2010). (holding

motion for a protective order or to quash or modify a subpoena must be made prior scheduled date

of the deposition).

If a person subject to a subpoena fails to comply or make a timely motion, the serving party

"may, at any time, on notice to the commanded person, [ ] move the court for the district where

compliance is required for an order compelling production or inspection."  Id. at 45(d)(2).

Similarly, the Court for the district where compliance is required "may hold in contempt a person

who, having been served, fails without adequate excuse to obey the subpoena or an order related

to it."  Id. at 45(g); Doe v. Baylor Univ., No. 6:16-CV-173-RP, 2019 U.S. Dist. LEXIS 99362, at

*43 (W.D. Tex. June 7, 2019); Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (holding power

to punish for contempt is inherent in all courts); Ibarra v. Baker, 338 F. App'x 457, 471 (5th Cir.

3

2009) (the issuing court may hold a person in contempt who without excuse fails to obey a subpoena).

When a party seeks a civil contempt finding in relation to a subpoena, the party must show by clear and convincing evidence that the alleged contemnor violated the court's prior orders. Shafer v. Army & Air Force Exch. Serv., 376 F.3d 386, 396 (5th Cir. 2004). Thereafter, the burden shifts to the alleged contemnor to produce detailed evidence explaining why he cannot comply, which requires more than a mere assertion of inability to comply. Lear Siegler Servs. v. Ensil Int'l Corp., No. SA-05-CA-679-XR, 2011 U.S. Dist. LEXIS 161995, at *9 (W.D. Tex. Mar. 15, 2011). The alleged contemnor must show that he has, in good faith, made all reasonable efforts to comply with the order; if a sufficient showing is made, the burden shifts back to the party seeking to show contempt to prove the alleged contemnor's ability to comply with the court's order. Id.

In the instant case, this Court should issue an order holding White in contempt and compel him to comply with the subpoena because he has wholly failed to comply, serve objections, or make a motion to quash or modify—whether timely or otherwise—regarding the subpoena or its scope, relevance, or burden.

The subpoena was properly served upon White in person at his friend's home in Houston, Texas.  White accepted service and did not raise any objections or make any motion to quash or modify. The subpoena called for him to appear for his deposition remotely via Zoom video conference. See Fed. R. Civ. P. 45(a); In re Combat, 2021 U.S. Dist. LEXIS 121444, at *14-15 (holding subpoena complied with geographic requirements of Rule 45 where witness was commanded to appear for his deposition remotely via a Zoom video conference).

As explained above, White wholly failed to appear for his deposition, raise any objections, or make a motion to quash or modify. This Court has recognized that these facts, alone, can justify

4

a finding of contempt and the issuance of an order compelling Mr. White's compliance with the Subpoena. Am. Fed'n of Musicians of the United States & Can. v. Skodam Films, LLC, 313 F.R.D. 39, 57 (N.D. Tex. 2015) (stating the remedy for failure to comply with a subpoena is to hold the non-complying person in contempt of court).

White has not raised any objections or given any excuses for his non-appearance on the date of the deposition. His lack of response does not satisfy the written objection requirement of Rule 45. See Fed. R. Civ. P. 45(d) (objections must be written and served no later than 14 days after subpoena was served). White has also missed his opportunity to serve a motion to quash or modify the Subpoena. King v. Fid. Nat'l Bank, 712 F.2d 188, 191 (5th Cir. 1983) (a motion to quash must be made and granted before the scheduled deposition). Also, since the subpoena calls for White to appear for his deposition remotely via Zoom, the time and travel burden of compliance is nearly nonexistent, as he can comply from anywhere of his choosing. Cf. In re Combat, 2021 U.S. Dist. LEXIS 121444, at *14-15; Int'l Seaway Trading Corp. v. Target Corp., No. 0:20-mc-00086-NEB-KMM, 2021 U.S. Dist. LEXIS 31755, *12-13 (D. Minn. Feb. 22, 2021); In re Newbrook Shipping Corp., 498 F. Supp. 3d 807, 815 (D. Md. 2020) ("Given the modification of the deposition notice to provide for a remote deposition over Zoom . . . the deposition notice no longer requires [the witness] to travel more than 100 miles (or at all) to comply.").

White's testimony is imperative to Oshkosh's defense in the Morgan Action. As such, the Court should issue an order compelling White's compliance, as a remote video deposition is proportional to the needs of the case, and the likely benefit of White's testimony far outweighs the minimal burden imposed upon him.

Furthermore, the Court should also find White in contempt based on his outright failure to comply with the subpoena or come forward with any sort of excuse, justification or objection. See

5

Fed. R. Civ. P. 45(g) (district courts may hold a person in contempt for failure to obey a subpoena in the absence of an adequate excuse); Am. Fed'n of Musicians of the United States & Can. v. Skodam Films, LLC, 313 F.R.D. 39, 57 (N.D. Tex. 2015) (the remedy for failure to comply with a subpoena is to hold the non-complying person in contempt of court).

White's contemptable conduct does beyond mere noncompliance.  He has refused to answer the communications with Oshkosh on the date appearance was expected.  Oshkosh has made amicable efforts to reach White and he has failed to respond, serve a motion to quash, raise timely objections, or provide an explanation for his failure to appear. Accordingly, this Court should find White in contempt and issue an order compelling his compliance with the Subpoena.

### CONCLUSION

In light of White's conduct and complete refusal to comply the subpoena, Oshkosh respectfully requests that this Court grant its Motion to for Contempt and Compelling a Deposition of Kevin White, and issue an order pursuant to Rule 45(g) as follows:

(a) Finding White in contempt and obligated to pay the reasonable fees and costs for bringing the Motion, as well as such other sanctions as deemed just and proper by this Court;

(b) Compelling White to comply with the subpoena and appear for a deposition via Zoom within 14 days after this Court issues an Order granting this Motion;

(c) Authorizing service of this Motion and any subsequent papers or orders on White using the address he accepted service on previously: 14550 Fonmeadow Dr., Houston Texas 77035; and

(d) Authorizing service of this Motion and any subsequent papers or orders by electronic mail as proper notice of same to counsel of record for the parties to the underlying action.

6

DATED:  May 22, 2023

By:  _____
Anthony J. Colucci, III
Marybeth P. Mantharam
Torrey E. Grenda
800 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 853-4080
ajc3@colucci-gallaher.com
mpm@colucci-gallaher.com
tgrenda@colucci-gallaher.com
*Attorneys for Defendants*

7

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 22, 2023, a copy of the foregoing document was served on the following counsel by email:

> James T. Scime, Esq.
> Melissa D. Wischerath, Esq.
> Lipsitz Green Scime Cambria, LLP
> 42 Delaware Avenue, Suite 120
> Buffalo, New York 14202
> Phone: 849-1333
> jscime@lglaw.com
> mwischerath@lglaw.com
> *Attorneys for Plaintiff*

Marybeth P. Mantharam

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

In the Matter of Motion to Enforce Subpoena
Issued to KEVIN WHITE

In relation to action pending in Western District of
New York, *April Morgan v. Oshkosh Corporation
and Oshkosh Defense, LLC.*

Case Number Case No. 21-cv-00779-LJV-HKS

Case No.

United States Courts
Southern District of Texas
F I L E D

MAY 2 6 2023

Nathan Ochsner, Clerk of Court

### ATTORNEY AFFIDAVIT

STATE OF NEW YORK   )
COUNTY OF ERIE     )ss.:

Marybeth P. Mantharam, being duly sworn, deposes and says:

1.    I am an attorney admitted to practice in the United States District Court for the Western District of New York and am a member of Colucci & Gallaher, P.C., attorneys for Defendants Oshkosh Corporation and Oshkosh Defense, LLC (collectively "Oshkosh") in connection with the above-captioned matter. As such, I am fully familiar with the facts and circumstances of this matter.

2.    I submit this affidavit in support of Oshkosh's Motion for Contempt and to Compel a Deposition of Kevin White.

### RELEVANT PROCEDURAL HISTORY

3.    On May 26, 2021, Plaintiff commenced this action in the Supreme Court of New York, Erie County, with the filing of a Summons and Complaint, a true and accurate copy of which is attached as Exhibit A.

4.    Plaintiff alleges that on June 6, 2019, the decedent, Christopher Jordan Lynn Morgan ("Morgan"), was a cadet enrolled at the United States Military Academy at West

Point ("West Point"), and sustained fatal injuries while being transported in the back of a Light Medium Tactical Vehicle ("LMTV") M1085 Cargo Truck (the "Truck") that rolled over. See Ex. A at ¶ 6.

5.       Plaintiff alleges that Oshkosh designed and manufactured the Truck and has asserted causes of action based in negligence and strict products liability. See Ex. A at ¶¶ 7-8, 15.

6.       On June 30, 2021, Oshkosh timely filed its Answer and Affirmative Defenses, a true and accurate copy of which is attached as Exhibit B.

7.       On July 2, 2021, this case was removed to the United States District Court for the Western District of New York. A true and accurate copy of the Notice of Removal is attached as Exhibit C.

8.       On October 29, 2021, Oshkosh served a *Touhy Request* for Official Information and to depose members of the military on the United States Army ("Army"), a true and accurate copy of which is attached as Exhibit D. In order to respond to the *Touhy* Request, the Army required that a Privacy Act Protective Order be issued.

9.       On December 16, 2021, the Western District of New York entered an Amended Stipulated Protective Order, a true and correct copy of which is attached as Exhibit O along with the So Ordered Text Entry.

10.     On January 11, 2022, the Western District of New York entered the Privacy Act Protective Order, a true and accurate copy of which is attached as Exhibit E.

Case 4:23-mc-00868   Document 1   Filed on 05/26/23 in TXSD   Page 12 of 21

RELEVANT FACTUAL BACKGROUND

11.    In June 2019, Morgan was participating in summer field training at West Point.  A true and accurate copy of relevant portions of the testimony of Ethan Porter is attached at Exhibit F at 27.[1]

12.    The G-Company, 1-28 Task Force ("1-28") based in Fort Benning, Georgia was assigned to provide transport assistance to the cadets at West Point that summer.  See Ex. F at 55, and a true and accurate copy of relevant portions of the deposition testimony of Kazper Lewis attached as Exhibit G at 20-21.

13.    Soldiers from 1-28 were assigned as drivers and truck commanders ("TCs") to the LMTVs that transported the cadets.  See Ex. F at 55-56; Ex. G at 21.

14.    Typically, TCs are more knowledgeable and outrank the drivers, and act as a second set of eyes for the driver.  See Ex. F.

15.    CPT Joshua Turley ("Turley") was the Company Commander for 1-28.  A true and accurate copy of Turley's testimony is attached as Exhibit H at 11.

16.    On the day of the accident, June 6, 2019, the cadets were being transported from Camp Buckner to the Land Navigation Site ("LNS") for skills training.  See Ex. F at 28; Ex. G at 16-17.

17.    Morgan was an occupant in the back of the Truck, which was the last LMTV in the convoy transporting cadets to the LNS.  See Ex. F at 25; Ex. G at 22-23.

---

[1]    Pursuant to Paragraph 6 of the Amended Stipulated Protective Order (Exhibit O), deposition transcripts in this matter have not been designated as Confidential Material, and therefore, do not need to be filed under seal.

18.     1LT Ethan Porter ("Porter") was sitting in the last troop seat closest to the rear gate in the LMTV immediately in front of the Truck during the convoy.  See Ex. F at 25, 62.

19.     Porter then saw the Truck having difficulty and going sideways toward the shoulder on the passenger side, and then the Truck rolled over one and a half times very slowly and landed belly up.  See Ex. F at 62-65.

20.     Porter believes that the driver of the Truck got too close to the shoulder on the passenger side of the Truck.  See Ex. F at 67.

21.     1LT Ryan Parker ("Parker") was in the back of the Truck on the passenger's side at the time of the accident.  A true and accurate copy of relevant portions of Parker's testimony is attached as Exhibit I at 9, 18-19.

22.     Importantly, before the convoy began, Parker observed the driver of the Truck looking "overly tired" and ostensibly sleeping with her head down on the steering wheel before she began driving.  See Ex. I at 20.

23.     Further, Parker testified that he observed the Truck swerving a lot and speeding to catch up to the LMTV ahead of it.  See Ex. I at 20-22.

24.     Parker also confirmed that the Truck struck a tree before the accident, and that he heard a branch "crack."  See Ex. I at 22-23.

25.     The driver of the Truck was SSG Ladonies Strong ("Strong") and the TC was PFC Kevin White ("White").  See Ex. H at 11-12, 17, 19.

26.     Strong was a transportation specialist, while White was a water specialist. See Ex. H at 12, 17.

4

27.    Importantly, Strong outranked White, which (as stated above) was not the typical procedure. See Ex. I 64-65.

28.    The TC typically outranks the driver because the TC has overall responsibility for the safety of the vehicle and its occupants. See Ex. I at 64-65.

29.    Parker testified that he spoke with White at the hospital after the accident. See Ex. I at 41.

30.    White was angry with Strong for driving too fast and swerving around potholes (they were supposed to drive through the potholes). See Ex. I at 42-48.

31.    Most importantly, White told Parker that Strong was texting at the time of the accident. See Ex. I at 48-49.

32.    Parker explained that because the TC had the authority to order the driver to stop texting while driving, White being of lower rank than Strong likely made that difficult for him. See Ex. I at 64-65.

33.    Turley also spoke with White at the accident site, and he told him that he was angry with Strong for running off after the accident rather than helping the cadets. See Ex. H at 59).

34.    That evening, Turley was advised by an investigating officer that Strong was using her Apple watch at the time of the accident. See Ex. H at 62.

35.    The next day, White admitted to Turley that he saw Strong looking at her Apple watch at the time of the accident. See Ex. H at 64.

36.    It was also revealed that Strong tried to conceal her cell phone when it was being confiscated. See Ex. H at 67-68.

37.     Turley testified that the accident was caused by Strong using her Apple watch at the time of the accident.  See Ex. H at 88.

38.     Strong was convicted of criminally negligent homicide and destruction of evidence following an Army court-martial proceeding, and was subsequently sentenced to three (3) years confinement at Leavenworth.  See Ex. F at 73; Ex. H at 68.

### SERVICE ATTEMPTS AND COMMUNICATIONS

39.     Due to Mr. White's first-hand knowledge of the circumstances surrounding the accident, his deposition testimony is imperative to the defense of the underlying action.

40.     Pursuant to its *Touhy* Request, Oshkosh received permission from the Army to depose White.

41.     On August 30, 2022, the Army advised that White was discharged from the Army on December 18, 2020 and no longer within its control.  A true and correct copy of the email is attached as Exhibit J.

42.     Jillian Everett, a paralegal at Colucci & Gallaher, P.C., performed a skip trace in an attempt to locate the best address for White, which revealed the following address: 665 Kandle Dr., Fort Benning, GA 31905-9529.

43.     On December 15, 2022, December 21, 2022 and December 23, 2022, Oshkosh attempted to serve White with a Subpoena to Testify at the Fort Benning address to no avail ("Fort Benning Subpoena").  Oshkosh was told that White no longer lives at that address.  A true and correct copy of the Fort Benning Subpoena is attached as Exhibit K.

44. The Army provided the following last known address of White: 3714 Simsbrook Drive, Houston, Texas.

45. On December 28, 2022 and January 5, 2023, Oshkosh attempted to serve White with a Subpoena to Testify at the Houston address to no avail (Houston Subpoena). A true and correct copy of the Houston Subpoena is attached as Exhibit L.

46. On January 24, 2023, Oshkosh's private investigator ("PI") was able to speak with White via Facebook messenger. White shared his cellphone number and spoke with the PI over the telephone. White told the PI that he lives in Austin, TX, but would not provide his home address.

47. On January 27, 2023, Ms. Everett called White, without answer. Ms. Everett sent him a text message, to which he responded and then spoke with her on the telephone. At that time, White was cooperative. However, once Ms. Everett informed White that he must call the Army's attorney, he hung up the phone. A true and correct copy of the entire text exchange is attached as Exhibit M.

48. On January 28, 2023, White called the PI on the telephone in order to set up a location to accept service of Houston Subpoena. White informed the PI that he would be in Houston for a couple hours meeting with his friend, and requested that he be served there.

49. On January 29, 2023, White was served at his friend, Deonte Smith's ("Smith") house in Houston, Texas. The address for service was: 14550 Fonmeadow Dr. Houston, Texas 77035. A true and accurate copy of the Affidavit of Service attached as Exhibit N.

7

50. On January 30, 2023, Ms. Everett called White without answer, to which she followed up with a text message. See Ex. M.

51. On January 30, 2023, White called Ms. Everett while with Smith. He agreed to provide dates to appear for the deposition, and expressed worry that he may not remember anything from the incident.

52. On January 31, 2023, Ms. Everett and White exchange text conversations and set the date for deposition as March 16, 2023 at 9 a.m. Central Time. See Ex. M.

53. On March 6, 2023, Ms. Everett sent a text message to White with the Zoom link information for the deposition and to reconfirm the date and time. White did not respond, but text exchange shows that he read it. See Ex. M.

54. On March 13, 2023, Ms. Everett calls White to confirm his deposition. He does not respond, but immediately calls her back and confirms he is in receipt of the zoom link and that he will appear on March 16, 2023 at 9 a.m. Central Time.

55. On March 16, 2023, White does not appear for the deposition. Ms. Everett sent him a text at 9:05 a.m. Central Time asking if he is having trouble logging in. See Ex. M.

56. On March 16, 2023, Ms. Everett calls White at 9:10 a.m. Central Time to see if he is going to appear for his deposition. His phone does not ring and his voicemail is not set up. There is no further response from White, but the text message shows that it was read by White at 10:05 a.m. Central Time. See Ex. M.

57. On March 16, 2023, counsel for Oshkosh, as well as counsel for plaintiff, counsel for the Army, and the Assistant United States Attorney for the Western District of

8

New York appeared and waited for White to no avail. Upon information and belief, counsel for plaintiff and the AUSA confirmed that they had spoken with White about his deposition as well.

58. In the time since the Houston Subpoena was served upon White, Oshkosh has not received any written objections from White regarding his deposition. Likewise, Oshkosh has not received any communications from or on behalf of White attempting to comply with the Houston Subpoena or providing any sort of an explanation as why he might be unable to do so.

**WHEREFORE**, Oshkosh respectfully requests that this Court grant its Motion to for Contempt and Compelling a Deposition of Kevin White, and issue an order pursuant to Rule 45(g) as follows:

(a) Finding White in contempt and obligated to pay the reasonable fees and costs for bringing the Motion, as well as such other sanctions as deemed just and proper by this Court;

(b) Compelling White to comply with the Houston Subpoena and appear for a deposition via Zoom within 14 days after this Court issues an Order granting this Motion;

(c) Authorizing service of this Motion and any subsequent papers or orders on White using the address he accepted service on previously: 14550 Fonmeadow Dr., Houston, Texas 77035; and

(d) Authorizing service of this Motion and any subsequent papers or orders by electronic mail as proper notice of same to counsel of record for the parties to the underlying action.

Marybeth P. Mantharam

Sworn to before me this 22nd.
day of May, 2023

Notary Public

BARBARA A. URBAN
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Aug. 14, 2025

9

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 22, 2023, a copy of the foregoing document was served on the following counsel by email:

> James T. Scime, Esq.
> Melissa D. Wischerath, Esq.
> Lipsitz Green Scime Cambria, LLP
> 42 Delaware Avenue, Suite 120
> Buffalo, New York 14202
> Phone: 849-1333
> jscime@lglaw.com
> mwischerath@lglaw.com
> *Attorneys for Plaintiff*

Marybeth P. Mantharam

10

# COLUCCI & GALLAHER, P.C.

Direct Dial:        (716) 856-4868
Email:              mpm@colucci-gallaher.com

May 25, 2023

**Via Overnight Mail**
Nathan Ochsner, Clerk of Court
United States District Court
Southern District of Texas
515 Rusk Avenue
Houston, TX 77002

Re:     In the Matter of Motion to Enforce Subpoena Issued to Kevin White

        In relation to action pending in Western District of New York, *April Morgan*
        *v. Oshkosh Corporation and Oshkosh Defense*
        Case No. 21-cv-00779-LJV-HKS

Dear Mr. Ochsner:

    This firm represents Oshkosh Corporation and Oshkosh Defense, LLC (collectively "Oshkosh") in the matter of *April S. Morgan April S. Morgan, Administrator of the Estate of Christopher Jordan Lynn Morgan v. Oshkosh Corporation and Oshkosh Defense, LLC*, case number 21-CV-00779-LJV-HKS, pending in the Western District of New York.

    We served a Subpoena to Testify at a deposition on a non-party witness located in the Southern District of Texas. That witness failed to appear at the deposition, and we wish to file a Motion for Contempt and to Compel in the Southern District of Texas. We were advised by your staff to submit a Motion for Pro Hac Vice admission and the Motion for Contempt to this address, in order for the Court to open a miscellaneous case and file the papers through the CM/ECF system.

    Kindly let us know when miscellaneous case is opened. Should you need further information, please contact the undersigned. Thank you for your assistance.

                                    Respectfully submitted,

                                    Marybeth P. Mantharam
                                    for COLUCCI & GALLAHER, P.C.

MPM:bu
Enclosures

ORIGIN ID:BUFA      (716) 853-4080
MARYBETH P. MANTHARAM
COLUCCI & GALLAHER, P.C.
800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NY 14202
UNITED STATES US

SHIP DATE: 25MAY23
ACTWGT: 2.00 LB
CAD: 1012752167/NET4810

BILL SENDER

TO   NATHAN OCHSNER, CLERK OF COURT
     USDC-SOUTHERN DISTRICT OF TEXAS
     BOB CASEY UNITED STATES COURTHOUSE
     515 RUSK AVENUE
     HOUSTON TX 77002
     (713) 250-5500
     INV:                    REF: OSHKOSH - MORGAN
     PO:                     DEPT:

TRK#   7722 5373 0569
0201

FRI - 26 MAY 10:30A
PRIORITY OVERNIGHT

XA EIXA                      77002
                    TX-US     IAH

United States Courts
Southern District of Texas
F I L E D

MAY 2 6 2023

Nathan Ochsner, Clerk of Court

FedEx